UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER KUHNMUENCH and
THERESA KUHNMUENCH,

    Plaintiffs,

v.

LIVANOVA PLC; LIVANOVA
HOLDING USA, INC.; and LIVANOVA
DEUTSCHLAND GMBH,

    Defendants.
_____/

Case No. 17-11719

Paul D. Borman
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

# OPINION AND ORDER DENYING DEFENDANT LIVANOVA PLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

This is a product-liability action brought by Plaintiffs Peter and Theresa Kuhnmuench against three related defendants: LivaNova PLC ("**LivaNova**"), LivaNova Holding USA, Inc. ("**LivaNova USA**"), and LivaNova Deutschland GmbH ("**LivaNova Deutschland**"). Before the Court is LivaNova's Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 15.) For the reasons below, the Court will deny LivaNova's Motion.

## I.    BACKGROUND

### A.   Procedural History

Each of the three Defendants in this action has proceeded differently in litigating this matter so far. As the instant Motion was filed by LivaNova alone, the

following procedural history concerns that Defendant only.

Plaintiffs filed their initial Complaint on May 31, 2017. (ECF No. 1, Compl.) The Complaint alleged that in the course of undergoing heart surgery in 2014, Plaintiff Peter Kuhnmuench suffered a severe infection as a result of bacteria that originated in a device used during the operation: the Sorin 3T Heater-Cooler System ("**3T System**"). (Compl. ¶¶ 40-59.) The Complaint further alleged that the 3T Heater-Cooler System was "designed, manufactured, marketed, and/or sold by" Defendants to the hospital at which the surgery was performed. (Compl. ¶¶ 17-30.) Invoking this Court's diversity jurisdiction, the Complaint asserted five claims: Negligence (Count I), Breach of Implied Warranty of Fitness (Count II), Breach of Express Warranty (Count III), Gross Negligence (Count IV), and a derivative Loss of Consortium claim asserted by Plaintiff Theresa Kuhnmuench, Peter's wife (Count V). (Compl. ¶¶ 60-86.)

LivaNova moved to dismiss the original Complaint for lack of personal jurisdiction on July 24, 2017. (ECF No. 10.) Plaintiffs made two separate filings by way of a response on August 14, 2017: a response brief in opposition to LivaNova's motion (ECF No. 13), and an Amended Complaint (ECF No. 12, Am. Compl.). The Amended Complaint contained several new factual allegations concerning the manufacture of the 3T System as well as statements by LivaNova regarding the 3T System (Am. Compl. ¶¶ 18-28.), but was otherwise materially identical to the

original Complaint. The Amended Complaint superseded the original Complaint and thus mooted LivaNova's motion to dismiss the original Complaint. *See Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("'An amended complaint supersedes an earlier complaint for all purposes.'") (quoting *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013)).

LivaNova filed a Motion to Dismiss the Amended Complaint for lack of personal jurisdiction on August 28, 2017 (ECF No. 15, LivaNova Mot.), and that Motion is presently before the Court. Plaintiffs filed a timely Response on September 18, 2017. (ECF No. 23, Pls.' Resp.) LivaNova filed a timely Reply on October 2, 2017. (ECF No. 27, LivaNova Reply.) This Court conducted a hearing on LivaNova's Motion on October 27, 2017.

**B.  Jurisdictional Facts**

According to the sworn Declaration of Taylor Pollock, Vice President of Corporate Legal Affairs for LivaNova USA, LivaNova is a "public limited company" incorporated under the laws of England and Wales, and headquartered in London, United Kingdom. (ECF No. 10 Ex. 4, Declaration of Taylor Pollock ¶ 5.) The company was formed in February 2015 in order to facilitate the merger of Cyberonics, Inc., a Delaware corporation headquartered in Houston, Texas, and Sorin S.p.A., an Italian joint-stock company. According to LivaNova's most recent Form 10-K, filed with the United States Securities and Exchange Commission

("**SEC**"), LivaNova "became the holding company of the combined businesses of Cyberonics and Sorin . . . effective October 19, 2015." (Pollock Decl. Ex. 1, 2016 SEC Form 10-K at 19, Pg ID 156; Pollock Decl. ¶¶ 1, 6.)

Until the merger became effective in October 2015, Sorin S.p.A. was an Italian public company headquartered in Italy. LivaNova asserts that Sorin S.p.A., itself a holding company like its successor LivaNova, had never registered to transact business, maintained offices, employed registered agents or other employees, paid taxes, or rented or owned personal property in Michigan. LivaNova further asserts that Sorin S.p.A. never "manufactured, promoted, marketed, advertised, developed, designed, or sold any products, including the 3T Heater Cooler System at issue in this case, in Michigan, or anywhere else in the United States." (Pollock Decl. ¶ 7.) These factual averments regarding Sorin S.p.A. are averred to be equally true of LivaNova. (Pollock Decl. ¶ 9.)

Both before and after the 2015 merger, LivaNova USA's predecessor Sorin Group USA, Inc. ("**Sorin USA**") conducted business in its own name in the United States. (Pollock Decl. ¶ 10.) Specifically, Sorin USA marketed and sold cardiopulmonary products, including the 3T System, in Michigan and elsewhere in the United States, and it was Sorin USA that sold the 3T System to the hospital referenced in the Amended Complaint. At all times relevant to the allegations in this lawsuit, Sorin USA communicated directly with customers (Pollock Decl. ¶ 11);

bore profit and loss responsibilities for the sale and marketing of cardiopulmonary products (*id.* ¶ 15); employed approximately 350 sales, sales, service, management, manufacturing and administrative employees throughout the United States (*id.* ¶ 16); conducted business with third parties in its own name (*id.* ¶ 17); maintained independent control over the sale and distribution of its products, as well as spending and investment decisions (*id.* ¶¶ 18, 20); independently managed its own inventory; maintained its own business records at its headquarters in Colorado (*id.* ¶¶ 18, 21); and paid taxes and otherwise interacted with the United States government on its own behalf and in its own name (*id.* ¶¶ 19, 21). LivaNova asserts that during all times relevant to this lawsuit, LivaNova did not share any common officers or directors with Sorin USA, participate in Sorin USA's day-to-day business operations, or pay any of Sorin USA's employees. (*Id.* ¶¶ 12-13, 16.)

Pursuant to a corporate reorganization effective July 21, 2017, Sorin USA changed its name to LivaNova Holding USA, Inc. (*Id.* ¶ 20.)

## II.     LEGAL STANDARDS

Plaintiffs bear the burden of establishing that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002). The Court has three options when faced with a motion to dismiss for lack of personal jurisdiction. The court may: (1) decide the motion on affidavits alone; (2) permit discovery to help rule on the motion; or (3) conduct an evidentiary hearing to decide

5

any remaining factual questions. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). Although the plaintiff always bears the burden of establishing that jurisdiction exists, the method selected by the court to resolve the issue will affect the weight of the burden. *Id.* The Sixth Circuit described these options, and the effect that each of them has on the plaintiff's burden, in the following way:

> The plaintiff bears the burden of establishing through "specific facts" that personal jurisdiction exists over the non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence. *See Kroger Co. v. Malease Foods Corp.,* 437 F.3d 506, 510 & n. 3 (6th Cir.2006); *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). But where, as here, the defendant has moved to dismiss the case under Rule 12(b)(2) for lack of personal jurisdiction and the district court rules on the motion without an evidentiary hearing, the plaintiff need only make a "prima facie" case that the court has personal jurisdiction. *Kroger,* 437 F.3d at 510. In this procedural posture, we do not weigh the facts disputed by the parties but instead consider the pleadings in the light most favorable to the plaintiff, although we may consider the defendant's undisputed factual assertions. *See Kerry Steel [Inc. v. Paragon Indus.],* 106 F.3d [147 (6th Cir.1997)] at 153; *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1261–62 (6th Cir.1996). But also where, as here, "the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction," the prima facie "proposition loses some of its significance." *[Int'l Technologies Consultants, Inc. v.] Euroglas S.A.,* 107 F.3d [386 (6th Cir.1986)] at 391.

*Conn v. Zakharov,* 667 F.3d 705, 711 (6th Cir. 2012).

Thus, when the court relies solely on affidavits, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists to defeat a motion to dismiss. *Theunissen,* 935 F.2d at 1458. In such a scenario, the pleadings and affidavits are read in the light most favorable to the plaintiff. *Id.* at 1459. A moving defendant's contrary assertions can, however, present factual disputes that merit further investigation before an ultimate decision can be made whether jurisdiction exists. *Id.* at 1465 (remanding for an evidentiary hearing because of the "directly contradictory nature of the parties' assertions").

### III.  DISCUSSION

#### 1.  Personal jurisdiction and alter ego jurisdiction

"In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Nationwide Mut. Ins. Co. v. Tryg Int'l. Ins. Co.,* 91 F.3d 790, 793 (6th Cir. 1996)).

Michigan law recognizes two forms of personal jurisdiction over a corporation: general and specific. A court has general personal jurisdiction over a corporation, and can thus "render personal judgments against the corporation" in any action, if that corporation is incorporated under the laws of Michigan, consents to personal jurisdiction in Michigan, or "carr[ies] on . . . a continuous and systematic part of its general business within the state." Mich. Comp. Laws § 600.711.

7

Specific personal jurisdiction is tied to the particular acts or omissions that underlie the lawsuit. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) ("'[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Sixth Circuit has interpreted Michigan law to provide that a court may exercise specific personal jurisdiction over a corporate defendant

> if the defendant is amenable to service of process under the state's long-arm statute, and if the exercise of personal jurisdiction would not deny the defendants due process. Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one.

*Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (internal quotation marks and citations omitted).

Thus, the fundamental question for the purposes of the instant Motion to Dismiss is whether this Court's assertion of specific personal jurisdiction over LivaNova would comport with federal constitutional due process. For this to be the case, "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (alteration in original) (quoting

8

*Goodyear*, 564 U.S. at 919). The Sixth Circuit identifies three relevant factors:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

One other principle of personal jurisdiction doctrine is pertinent here. A court may constitutionally "exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). *See also Indah v. U.S. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011) (holding that a court may exercise personal jurisdiction over the parent company of a subsidiary that is itself subject to personal jurisdiction in that court "if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.") (citations and quotation marks omitted). Under Michigan law,

> [f]acts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

*Singh v. Daimler, AG*, 902 F. Supp. 2d 974, 981–82 (E.D. Mich. 2012) (quoting *United Ins. Grp. Agency, Inc. v. Patterson*, No. 299631, 2011 WL 5067251, at *2 (Mich. Ct. App. Oct. 25, 2011)).

### 2. Plaintiffs have made a *prima facie* case for this Court's exercise of personal jurisdiction over LivaNova.

Plaintiffs have submitted, as exhibits to their Response to LivaNova's Motion, a series of public documents released by LivaNova that, they argue, demonstrate an alter ego relationship between LivaNova and one or both of the subsidiary Defendants for the purposes of personal jurisdiction. (Pls.' Resp. Exs. 1-5.)

The first of these documents is a press release by LivaNova dated August 7, 2017, and entitled "LivaNova Implements 3T Heater-Cooler Device Modification." (Pls.' Resp. Ex. 1 ("**August 2017 Press Release**").) The August 2017 Press Release states that "LivaNova PLC . . . (together with its subsidiaries as "LivaNova" or the "Company") . . . today announced the implementation of a device modification to

its existing 3T Heater-Cooler devices in Western Europe." (*Id.*) The August 2017 Press Release notes that "[d]uring the past fiscal quarter, LivaNova successfully completed verification and validation processes, which allowed the Company to obtain CE Mark for its 3T Heater-Cooler device modification. It began implementing upgrades in Europe and implementation will extend to other regions as local regulatory approvals are received." (*Id.*) According to the August 2017 Press Release, the modification "addresses regulatory actions and is designed to mitigate the potential for *Mycobacterium chimaera* (*M. chimaera*) contamination in open-heart surgery patients." (*Id.*) The modification of existing devices in the field, the August 2017 Press Release continues, would be the first component of a "three-part device remediation plan to address the important industry-wide issue concerning the use of heater-coolers during open-heart surgery." (*Id.*) The second component of the plan would be "LivaNova's no-charge deep disinfection service for 3T Heater-Cooler users who have reported confirmed *M. chimaera* contamination[,] . . . available in many countries around the world, but not yet in the United States where the Company is reviewing the regulatory pathway for implementation" with the U.S. Food and Drug Administration. (*Id.*) The third dimension of the remediation plan would be "the Company's loaner program," under which existing 3T System users would be "loaned a new 3T Heater-Cooler device at no charge." The loaner program "began in the United States and is being made available progressively on a global

11

basis, prioritizing and allocating devices to 3T Heater-Cooler users based on pre-established criteria. It will remain an integral part of the remediation plan until the device modification and deep disinfection services are approved for use worldwide." (*Id.*) The August 2017 Press Release also contains a quote by an individual named Jim Trevor, identified as "LivaNova's Senior Vice President for 3T Heater-Cooler devices," who stated as follows:

> "We are pleased to be rolling out our 3T Heater-Cooler design modification in numerous countries, which is intended to be the permanent design solution that addresses the issue of aerosolization . . . . Care for our patients and the quality of our products are at the forefront of everything we do. We want to ensure safe, continued access to this important device that enables lifesaving cardiac surgery."

(*Id.*)

Plaintiffs' second exhibit is another press release concerning LivaNova's remediation plan, dated March 1, 2017 and characterized by Plaintiffs as directed at investors specifically. (Pls.' Resp. Ex. 2 ("**March 2017 Press Release**").) Unlike the August 2017 Press Release, the March 2017 Press Release does not identify LivaNova's subsidiaries in its definition of the company, stating simply that "LivaNova PLC (the 'Company') has recognized a liability under US GAAP[1] in the

---

[1] GAAP, or "Generally Accepted Accounting Principles[,] 'are the conventions, rules and procedures that constitute the professional standards of the accounting profession.'" *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 546 (6th Cir. 1999).

12

amount of $33.5 million for a product remediation plan related to its 3T Heater Cooler device." (Pls.' Resp. Ex. 2.) The March 2017 Press Release then describes the three components of the remediation plan in similar terms to the August 2017 Press Release, and further notes that in addition to the $33.5 million liability, "the Company" recognized "$4.0 million of costs under US GAAP incurred during the twelve month period ended December 31, 2016," all relating to the execution of the three components of the remediation plan. (*Id.*) Near the end, the March 2017 Press Release includes a brief section entitled "About LivaNova," which notes that "[h]eadquartered in London and with a presence in more than 100 countries worldwide, the company employs approximately 4,600 employees," and that "LivaNova operates as three business franchises: Cardiac Surgery, Neuromodulation and Cardiac Rhythm Management, with operating headquarters in Mirandola (Italy), Houston (U.S.A.) and Clamart (France), respectively." (*Id.*) The March 2017 Press Release closes by directing requests for more information to LivaNova's website, or to one of two individuals: one identified as "Company Secretary" located in the United Kingdom, and one identified as "Vice President, Investor Relations & Corporate Communications" located in Houston, Texas.[2] (Pls.' Resp. Ex. 2.)

---

[2] The Court takes judicial notice of the locations of these two individuals based on the telephone numbers provided in the March 2017 Press Release. The Organization for International Standards identifies "1" as the country code for the United States, and "44" as the country code for the United Kingdom. *See* ISO 3166, available

13

Plaintiffs' third exhibit is an October 18, 2016 announcement by LivaNova of the "U.S. 3T Loaner Program"—presumably the same program referenced in the two 2017 press releases. (Pls.' Resp. Ex. 3 ("**October 2016 Announcement**".) The October 2016 Announcement characterizes the loaner program as a response "to the October 13, 2016 communications from the FDA and CDC about the Stöckert 3T Heater-Cooler System (3T), manufactured by LivaNova PLC's subsidiary Sorin Group Deutschland GmbH ('LivaNova')," and includes instructions for submitting online requests for loaner devices. (*Id.*) The October 2016 Announcement directs anyone with questions to "please contact your local LivaNova sales representative," and notes in bold text that "[t]his program is exclusively for U.S. hospitals and is not available outside the U.S." (*Id.*)

Finally, Plaintiffs have submitted as exhibits the 2016 Form 10-K that LivaNova filed with the SEC (Pls.' Resp. Ex. 4 ("**Form 10-K**")), as well as LivaNova's 2016 Annual Report (Pls.' Resp. Ex. 5 ("**Annual Report**")), and argue that throughout those documents, LivaNova broadly defines itself to include its subsidiaries in the same manner as it did in the August 2017 Press Release and the

---

online at https://www.iso.org/iso-3166-country-codes.html. The area code (281) and first three digits (228) of the United States telephone number indicate that it is located in Houston, Texas. *See* Texas Area Codes – Cities and Prefixes, Area Code 281, Public Utility Commission of Texas, https://www.puc.texas.gov/industry/maps/areacodes/ExchangeList.aspx?ac=281.

October 2016 Announcement (though not in the March 2017 Press Release). In the context of the Form 10-K and the Annual Report, Plaintiffs contend, this practice actually demonstrates that LivaNova is "integrally involved with its 3T business," since LivaNova did not have a "business reason" (*i.e.*, brand cultivation) for defining itself in this way in the disclosure documents like it did in the press releases. (Pls.' Resp. at 14-15, Pg ID 512-13.)

Considered in the light most favorable to Plaintiffs, the Court finds that Plaintiffs' evidence is sufficient to support a *prima facie* case for alter-ego jurisdiction. LivaNova's arguments against alter-ego jurisdiction rely on facts averred in the Pollock Declaration, and on the proposition that common branding between a parent and a subsidiary does not alone establish an alter-ego relationship. The Pollock Declaration does establish (and Plaintiffs have not rebutted) some facts that relate to the alter-ego factors outlined above: namely, that LivaNova does not handle its subsidiaries' payrolls, and that the subsidiaries do not purchase supplies exclusively from LivaNova. (*See* Pollock Decl. ¶¶ 14.) LivaNova's 2016 Annual Report also suggests that less than all of LivaNova's revenue comes from the sales of its subsidiaries. (*See* Pls.' Resp. Ex. 5 at 165, Pg ID 853.) And it is true that courts in this District and in others have found that common branding by itself does not establish an alter-ego relationship between parent and subsidiary. *See, e.g., Alexander Assocs., Inc. v. FCMP, Inc.*, No. 10-12355, 2012 WL 1033464, at *18

15

(E.D. Mich. Mar. 27, 2012) (finding that emails and a website that left "the impression of a single, unitary enterprise that has various plants and offices" were not independently sufficient to justify the exercise of alter-ego jurisdiction); *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010) (finding that a "common marketing image and joint use of trademarked logos" and evidence that the defendant companies were "portrayed as a single brand to the public . . . does not demonstrate the necessary control by defendant parent over the subsidiaries"), *aff'd*, 683 F.3d 462 (3d Cir. 2012).

But the evidence in the record is suggestive of more than just common branding, and it supports a *prima facie* case for personal jurisdiction based on alter-ego factors besides those that the facts in the Pollock Declaration encompass. It is undisputed that LivaNova wholly owns both subsidiary Defendants, and the Annual Report confirms this. (*See* Annual Report at 125-26, Pg ID 813-14.) The evidence does not clearly indicate whether either or both of the subsidiary Defendants are seriously undercapitalized or whether they derive all of their capital from LivaNova, but the Annual Report does at least reflect a notable discrepancy between LivaNova's investment in LivaNova USA's predecessor in 2016 (approximately $886 million) on the one hand, and that subsidiary's 2016 net revenue (approximately $193 million) and net profit (approximately $1.9 million) on the other. (*See* Annual Report at 126, 180, Pg ID 814, 868.) LivaNova's description of

the costs it incurred to implement the remedial program arguably suggests that it performed gratuitous services for (or at least on behalf of) its subsidiaries in the course of implementing the program. (Pls.' Resp. Ex. 3; Form 10-K at 61, Pg ID 585; Annual Report at 20, Pg ID 718.) Most importantly, LivaNova's discussions of the costs and planned implementation of the remedial program—both in the disclosures and in the publicity documents—imply a not insignificant level of direction and control by LivaNova of its subsidiaries' "policies and decisions," and that LivaNova "considered the subsidiary's project[s] to be its own." *Singh*, 902 F. Supp. 2d at 982.

Plaintiffs' evidence thus meets several different prongs of the alter-ego standard,[3] and viewing it in the light most favorable to Plaintiffs, the Court finds it is enough to support a *prima facie* case for alter-ego jurisdiction. Because Plaintiffs have met their burden in this regard, the Court will deny LivaNova's Motion to Dismiss for Lack of Personal Jurisdiction.

---

[3] The August 2017 Press Release directs inquiries to a corporate executive in the United States, and it contains a statement, ostensibly made on LivaNova's behalf, by Jim Trevor, a person identified as "LivaNova's Senior Vice President for 3T Heater-Cooler devices." (Pls.' Resp. Ex. 1.) It suggests that LivaNova itself views its subsidiaries in a way that tends to disregard corporate formalities, and Michigan law recognizes that as a consideration germane to the alter-ego analysis. *See Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 796 (E.D. Mich. 2014) (identifying "the honoring of corporate formalities" as a relevant factor in determining an alter-ego relationship) (quoting *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704–5 (6th Cir. 1988)).

## IV. CONCLUSION

For the reasons stated above, the Court hereby DENIES LivaNova's Motion to Dismiss for Lack of Personal Jurisdiction.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: November 15, 2017

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 15, 2017.

s/D. Tofil
Deborah Tofil, Case Manager